**STATE of Minnesota, Respondent,**

v.

**Anthony B. EBERHARDT, Appellant.**

**No. CO–85–1054.**

Court of Appeals of Minnesota.

Jan. 7, 1986.

Review Denied Feb. 19, 1986.

 

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

PARKER, Judge.

Appellant Anthony Eberhardt was convicted of one count of burglary in the first degree in violation of Minn.Stat. § 609.582, subd. 1(a) (1984), and one count of criminal sexual conduct in the first degree in violation of Minn.Stat. § 609.342(e)(i) (1984), after a jury trial. He appeals, challenging the validity of both convictions and the propriety of the sentence imposed for the

conviction for criminal sexual conduct. We affirm the conviction and reverse and remand for resentencing consistent with Minnesota Sentencing Guideline II.B.102.

## FACTS

At approximately 11:45 p.m. on August 5, 1984, K.C., the victim, was at home engaged in a telephone conversation with a friend. As she walked into the kitchen from another room, a male intruder punched and shoved her. When she tried to scream, the man shoved a cloth into her face and threatened to kill her if she were not quiet.

The intruder continued to hit K.C., and she momentarily lost consciousness. When she awoke, the man was lying on top of her on the floor. He again threatened to kill her, then searched her fingers for jewelry and forced her to submit to sexual intercourse.

During this time K.C. heard her five-year-old son screaming. She asked the intruder not to hurt her son; she told her son she would be fine and to sit on his bed. Finally, the intruder left through a kitchen window, and K.C. summoned the police. K.C. later ascertained that among the items missing from her home were cash and a wrist-watch with a black leather band and rectangular face bearing Roman numerals.

On August 22, 1984, Eberhardt was arrested by the Minneapolis police in regard to an unrelated charge of criminal sexual conduct. His fiancee was with him at the time of arrest and was wearing a wrist-watch similar to the one taken from K.C.'s home. K.C. identified the watch as the one stolen from her home, viewed a lineup, and identified Eberhardt as her assailant.

At trial the State was allowed to introduce evidence of another burglary and sexual assault which had been committed two weeks after the charged assault. P.M., the other victim, testified that during the early morning hours of August 18, 1984, she was awakened by a man who stuffed a cloth in her mouth, covered her face with a T-shirt, and held a knife to her throat. The man

threatened to kill her and forced her to go outside, where he raped her. He then took P.M. back into the house, where he took the cash from her wallet and fled.

P.M. reported the assault; the police followed a lead on a car which had been parked in the area and found that it was registered to Eberhardt. The address listed on the registration, which matched the location of the parked car, was just a half-block from P.M.'s home. The police lifted fingerprints from the frame of the window on P.M.'s home through which entry had been made. Two of the fingerprints were identified as Eberhardt's.

At trial P.M. identified Eberhardt as her assailant. Eberhardt elected not to testify but offered two alibi witnesses to buttress his defense that K.C. had misidentified him. His fiancee, whom he married while this case was pending, and his mother testified that they were with Eberhardt the night of the assault on K.C.

## ISSUES

1. Was the trial court's admission of *Spreigl* evidence proper?

2. Was appellant denied effective assistance of counsel?

3. Did the trial court err in ordering a 190-month sentence?

## DISCUSSION

### I

The State was allowed to introduce evidence of the *Spreigl* burglary and rape for the purposes of identification and establishing a common scheme or plan. A cautionary instruction as to the limited purpose of this evidence was given by the trial court at the time it was received and again during the final jury instructions.

In *State v. DeBaere*, 356 N.W.2d 301 (Minn.1984), the Supreme Court held that the trial court did not err in admitting *Spreigl* evidence concerning sexual assaults by the defendant upon five other women. Although one of the *Spreigl* as-

saults had resulted in a conviction, the others had not been reported to the police. *Id.* at 304–05. The *DeBaere* court summarized the *Spreigl* case law as follows:

> As stated in *State v. Morrison*, 310 N.W.2d 135, 137 (Minn.1981):
>
>> The key tests in determining admissibility of *Spreigl* evidence are whether the evidence is clear and convincing that defendant participated in the *Spreigl* offense, whether the *Spreigl* evidence is relevant and material to the state's case, and whether the potential of the *Spreigl* evidence for unfair prejudice substantially outweighs its probative value.
>
> In determining relevance and materiality, the trial court should consider the issues in the case, the reasons and need for the evidence, and whether there is a sufficiently close relationship between the charged offense and the *Spreigl* offense in time, place, or modus operandi. * * * We have been flexible in applying this "test" on appeal, upholding admission notwithstanding a lack of closeness in time or place if the relevance of the evidence was otherwise clear. * * *

*Id.* at 305 (citations omitted).

 Application of the *Spreigl* test to this case indicates that the trial court did not err in admitting evidence of the second offense:

(1) There was demonstrated need for the identification evidence. At trial in the instant case, the victim, K.C., was the sole adult eyewitness. Furthermore, the identification evidence was necessary because the defendant had served notice of intent to claim alibi. *State v. Bellcourt*, 312 Minn. 263, 265–66, 251 N.W.2d 631, 633 (Minn. 1977).

(2) The evidence that Eberhardt committed the *Spreigl* offense was clear and convincing. Eberhardt was residing at an address half a block away from P.M., the *Spreigl* victim. She identified Eberhardt as the man who attacked her. Eberhardt's fingerprints were found on the frame of the window through which entry had been made into P.M.'s home.

(3) The *Spreigl* evidence was relevant and material. In that rape, as in this case, the assailant entered a residence at night, shoved a cloth into the victim's mouth, told her to shut up or he would kill her, raped her, and stole cash before leaving. Furthermore, both rapes occurred in the same general area only two weeks apart.

We hold that the trial court did not abuse its discretion in admitting the *Spreigl* evidence, which was highly relevant and material to the issue of identification.

## II

Eberhardt asserts that his attorney failed to defend him zealously. He lists eight alleged errors to support his claim of ineffective representation.

As this court noted in *State v. Hanson*, 366 N.W.2d 377, 379 (Minn.Ct.App.1985):

> The Minnesota Supreme Court has repeatedly said that an appeal from a judgment of conviction is not the most appropriate way of raising an issue concerning the effectiveness of the trial counsel's representation because the reviewing court does not have the benefit of all the facts concerning why defense counsel did or did not do certain things. *See, e.g., State v. Cermak*, 350 N.W.2d 328, 332 n. 5 (Minn.1984); *State v. Zernechel*, 304 N.W.2d 365, 367 (Minn.1981). This issue is more effectively presented in a post-conviction proceeding under Minn.Stat. §§ 590.01–.06 (1984). *See, e.g., State v. Williams*, 282 Minn. 240, 163 N.W.2d 868, 869 (1969); *State v. Wenberg*, 357 N.W.2d 355, 356 (Minn.App.1984).

*Id.* (footnote omitted).

The benchmark for judging whether an individual defendant was denied effective representation is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2064, 80

L.Ed.2d 674 (1984). The proper standard for attorney performance is that of "reasonably effective assistance." *Id.* at ——, 104 S.Ct. 2064.

■ In this case defendant Eberhardt was represented at trial by an experienced public defender. Our review of the record indicates that Eberhardt was not denied effective representation of counsel.

### III

Eberhardt was convicted of one count of first-degree burglary and one count of first-degree criminal sexual conduct and was sentenced to concurrent terms of imprisonment of 34 months and 190 months, respectively. Eberhardt argues that he is entitled to a reduction of his sentence for first-degree criminal sexual conduct because (1) the length of his presumptive sentence for that conviction was calculated incorrectly, and (2) substantial and compelling circumstances did not exist to justify a double durational departure.

The trial court sentenced Eberhardt to double what the court regarded as the presumptive sentence for first-degree criminal sexual conduct. This was based on a severity level VIII offense and a criminal history score of 4; the increase in the criminal history score to 4 was apparently based on assigning a criminal history score point for the burglary conviction sentenced on the same date.

The State concedes that the court erred in assigning a 95-month presumptive sentence for the criminal sexual conduct conviction. Minnesota Sentencing Guideline II.B. governs the manner in which the criminal history score is to be calculated. The general rule under this section is that an offender is assigned one point for every felony conviction for which a felony sentence was stayed or imposed before the current sentencing.

■ However, there is an exception to this rule in cases where multiple sentences were imposed pursuant to Minn.Stat. § 609.585 (1984) for crimes committed during a single course of conduct. In those cases, an offender may be assigned only one point for the prior conviction; as a corollary to this exception, Comment II. B.102 provides:

> When multiple current convictions arise from a single course of conduct and multiple sentences are imposed on the same day pursuant to Minn.Stats. 609.585 or 609.251, the conviction and sentence for the "earlier" offense should not increase the criminal history score for the "later" offense.

Thus, Eberhardt's presumptive sentence for the "later" conviction of criminal sexual conduct should have been 71–81 months. We remand to the trial court for resentencing consistent with section II.B. of the guidelines. The trial court, in its discretion, may assign a presumptive sentence anywhere in the 71–81 month range.

■ Nevertheless, the trial court did not err in assigning a double durational departure from the sentencing guidelines. The court's decision to impose an aggravated sentence was justified by the fact that the rape was committed in the presence of K.C.'s five-year-old son, *State v. Profit*, 323 N.W.2d 34, 36 (Minn.1982), and because Eberhardt invaded K.C.'s zone of privacy by assaulting her in her own home. *See State v. Jones*, 328 N.W.2d 736, 738 (Minn. 1983); *State v. Morales*, 324 N.W.2d 374, 377 (Minn.1982).

### DECISION

Appellant's conviction of criminal sexual conduct in the first degree is affirmed. The case is remanded to the trial court for resentencing consistent with section II. B.102 of the sentencing guidelines and this opinion.

Affirmed in part, reversed in part, and remanded.