**STATE of Minnesota, Respondent,**

**v.**

**Gary Alan MILLER, Appellant.**

**No. C8–86–437.**

Court of Appeals of Minnesota.

Dec. 9, 1986.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, David J. Twa, Blue Earth Co. Atty., Mankato, for respondent.

C. Paul Jones, Public Defender, Laura Underkuffler, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and LANSING and LESLIE, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Gary Miller was tried and convicted of the crimes of third-degree burglary and misdemeanor theft. Miller appeals the conviction on three grounds: (1) the evidence was insufficient to sustain the conviction; (2) the trial court erred in refusing Miller's request to present testimony of his probation officer as character evidence; and (3) the trial court committed prejudicial error by refusing to grant Miller's motion to broaden a sequestration order to prohibit the prosecutor from discussing the testimony of previous witnesses while preparing future witnesses. We affirm.

## FACTS

On August 4, 1986, Syd's Farm Store (Syd's) and National Furniture Store (National) in Mankato were burglarized. Police responded to a burglar alarm and found the doors to both Syd's and National ajar with missing or broken glass. Inside Syd's the officers found a cold 12-pack of Mountain Dew, open and lying in the office area. The cash register's cash drawer was lying, empty, on top of the counter.

Outside National, police found a can of Mountain Dew and an unfinished child's rocker. National's office was a shambles. The pop machine had been broken into and change removed. A gold pocket watch, an unfinished child's rocker, and an estimated $50 to $60 were missing. Nearby, police found two pairs of gloves, a flashlight, a pane of glass, and a crowbar.

Two men were also found in the area, appellant Gary Miller and David Nelson. Miller had an unusually large amount of change in his pocket—86 nickels, 36 dimes, 22 quarters, and 5 pennies. He told the officers that the money was change from an evening of buying drinks. He said he had been drinking and was walking around "to clear his head." The police officer did not smell alcohol or think Miller acted intoxicated. When questioned, Miller denied that he knew Nelson, but later admitted knowing him.

Nelson was arrested approximately 30 minutes after Miller was apprehended in an area where an officer had earlier seen silhouettes of two men. Nelson said he had been visiting a girlfriend, but could not remember her last name or address. Nelson initially denied any involvement in the incident. He later admitted he and Miller had burglarized the two stores and stolen various items. Two weeks later he recanted and told the police he had acted alone. A week after that he again said that he and Miller had committed the burglaries. At trial he testified that he had recanted because Miller threatened him.

At trial Thomas Snilberg, the owner of Syd's, testified that they usually kept $15 to $35 in a cashdrawer which he found empty (except for pennies). James Johnson, National's owner, also testified on the items stolen from National.

As part of the plea agreement, Nelson pled guilty to misdemeanor theft. Nelson also testified for the prosecution at Miller's trial, as did the store owners and police officers. Their testimony was sometimes inconsistent, but not about Miller's presence in the area.

Cheryl Nielson, Nelson's girlfriend and the mother of their child, testified for Miller. She said that Nelson resented Miller's friendship with her and his closeness with their child. Miller testified in his own defense. He conceded lying to a Mankato police officer about his association with Nelson and lying about his employment at

an earlier court appearance. His testimony on his actions the night of the incident was consistent with his earlier statement.

At trial Miller requested an opportunity to call his probation officer as a character witness. Miller intended to elicit testimony about his change in attitude and behavior during their five-year association. The trial court denied the motion.

After the State's first witness testified, the trial court ordered that the witnesses be sequestered. The defense moved the court to prohibit the prosecution from discussing the testimony of past witnesses with future witnesses. The court expanded the order to prohibit witnesses from discussing testimony with each other, but declined to order the prosecution not to discuss the testimony with witnesses.

## ISSUES

1. Was the evidence sufficient to sustain Miller's conviction?

2. Did the trial court err in refusing Miller's request to present character evidence?

3. Did the trial court commit prejudicial error by refusing Miller's motion to prohibit the prosecution from discussing testimony of previous witnesses with subsequent witnesses?

## ANALYSIS

### I

Miller contends that Nelson's accomplice testimony is not sufficiently corroborated to sustain his conviction. Minnesota requires corroboration "[b]ecause the testimony of an accomplice is suspect and likely to have been given in hopes of receiving clemency." *State v. Jones*, 347 N.W.2d 796, 800 (Minn.1984); *see* Minn.Stat. § 634.-04 (1984).[1] Nelson, who pled guilty to the lesser charge of misdemeanor theft, is an accomplice and corroboration is necessary.

It is not necessary that corroboration establish a prima facie case. Corroborating evidence "is sufficient if it restores confidence in the accomplice's testimony, confirming its truth and pointing to the defendant's guilt in some substantial degree." *State v. Houle*, 257 N.W.2d 320, 324 (Minn.1977). In this case there is corroborating evidence that Miller was at the scene of the crime at 1:15 a.m., he had an unusually large amount of change in his pocket, and he initially lied about knowing Nelson. *See State v. Heuer*, 368 N.W.2d 7 (Minn.Ct.App.1985) (defendant's presence near crime scene at unreasonable hour sufficient corroboration to support accomplice testimony). This is adequate circumstantial evidence to infer Miller's participation in the burglaries and meet the corroboration requirements of Minn.Stat. § 634.04 (1984).

The jury had sufficient evidence from which it could reasonably find Miller guilty of the crimes of burglary and misdemeanor theft.

### II

Miller next contends that the trial court prejudicially erred in excluding the testimony of Miller's probation officer. The probation officer would have testified about Miller's positive change in attitude during their five-year association and explained that in his opinion few individuals with a past similar to Miller's would have been able to successfully complete a year of schooling.

Minn.R.Evid. 404(a)(1) provides that a defendant in a criminal case may introduce "evidence of a pertinent trait of his character" for the "purpose of proving that he acted in conformity therewith on a particular occasion." Such evidence may be admitted by reputation or opinion. Minn.R. Evid. 405(a). This exception to the general rule excluding character evidence is "so deeply imbedded in our jurisprudence as to

---

1. Minn.Stat. § 634.04 (1984) provides: "A conviction cannot be had upon the testimony of an accomplice, unless it is corroborated by such other evidence as tends to convict the defendant of the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

assume almost constitutional proportions." *State v. Demmings,* 310 Minn. 152, 154, 246 N.W.2d 31, 33 (1976) (quoting Advisory Committee to the drafters of Fed.R.Evid. 404(a)).

■ However, not all aspects of an accused character are open to scrutiny under this rule. Only "pertinent traits"—those involved in the offense charged—are within the scope of Minn.R.Evid. 404(a)(1). *State v. Posten,* 302 N.W.2d 638, 642 (Minn.1981). Miller has attempted to prove his good character by evidence of specific instances of good conduct. Such evidence is admissible only where the good conduct refutes "an essential element of a charge, claim, or defense." Minn.R.Evid. 405(b); *see also State v. DeBaere,* 356 N.W.2d 301, 306 (Minn.1984). The trial court did not commit error by refusing to admit the testimony of Miller's probation officer.

### III

■ The trial court appropriately ordered sequestration of the witnesses. *See State ʼv. Posten,* 302 N.W.2d 638, 640 (Minn.1981) (sequestration is left to the trial court's discretion). The basic purpose for sequestration of witnesses is to remove any possibility that a witness waiting to testify may be influenced consciously or subconsciously by the testimony of other witnesses and "to afford opposing counsel the opportunity of bringing out in cross-examination any discrepancies in the testimony of the various witnesses." *State v. Ellis,* 271 Minn. 345, 364, 136 N.W.2d 384, 396 (1965). Although the trial court expanded the order to prohibit the witnesses from talking to each other, it declined to specifically instruct the prosecutor to refrain from discussing previous testimony with prospective witnesses. *See State v. Sha,* 292 Minn. 182, 185, 193 N.W.2d 829, 831 (1972); *see also* Minn.R. Professional Conduct 3.8, Comment. There is no evidence Miller was prejudiced by the trial court's failure to order the prosecutor to refrain from discussing testimony with witnesses who had not yet testified. We recognize that specific prejudice is difficult to

show. However, when the issue is brought before us at the conclusion of the trial, reversible error must be predicated on actual prejudice. *State v. Bergland,* 294 Minn. 558, 202 N.W.2d 223 (1972).

### DECISION

There is sufficient corroboration of the accomplice's testimony to sustain Miller's conviction for burglary and theft.

The trial court properly refused to admit specific instances of Miller's conduct as character evidence.

Although the trial court should have ordered the prosecutor not to violate a sequestration order, no prejudice was shown and the error is not reversible.

Affirmed.