STATE of Minnesota, Respondent,

v.

**Donald Roy PATTERSON, Appellant.**

**No. C6–92–896.**

Court of Appeals of Minnesota.

Dec. 15, 1992.

John M. Stuart, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Robert M.A. Johnson, Anoka County Atty., Douglas Peine, Sp. Asst. County Atty., Anoka, for respondent.

Considered and decided by SHORT, P.J., and PARKER and PETERSON, JJ.

## OPINION

PARKER, Judge.

Appellant Donald Patterson challenges his bigamy conviction under Minn.Stat. § 609.355, subd. 2(3) (1990). Patterson argues the trial court erred in its instructions to the jury and by allowing testimony that his first wife left him under police protection. We affirm.

## FACTS

Patterson married Cynthia O'Keefe in 1985, and in the summer of 1990 they separated. Patterson testified that after they broke up Cynthia told him, during a telephone conversation, that she planned to get a divorce because she had found another man she wished to marry. Patterson further testified that he spoke with the man and that he confirmed their nuptial plans. Cynthia denied this conversation ever took place.

Patterson also testified that about a month after his phone conversation with Cynthia, his mother, Virginia Cook, told him she had received copies of divorce papers from Cynthia. Patterson indicated his mother told him he had lost custody of the children.

Patterson met Victoria Toups in September 1990. Victoria testified that one of the first questions she asked Patterson was whether he was married and that he told her he had been divorced for two years. In November 1990 Patterson asked Victoria to marry him. She agreed but asked to see his divorce papers; he told her he did not have copies of the papers but assured her he had been separated for two years and legally divorced for one year. They were married in February 1991.

Patterson and Victoria moved to Minnesota in April 1991 but, because of marital problems, Patterson moved out of their apartment after a month. He left a telephone bill behind which listed phone calls to Georgia. Victoria dialed the Georgia number and spoke with Cynthia's mother. Upon hearing that Patterson was still married to Cynthia, Victoria contacted the police. Patterson was subsequently charged with bigamy.

At trial Patterson acknowledged he married both Cynthia and Victoria, but claimed he believed he and Cynthia were divorced when he married Victoria. In support of his argument, he cited his alleged telephone conversation with Cynthia in which she told him of her plans to remarry and his conversation with his mother in which she allegedly told him she had received copies of divorce papers from Cynthia.

Patterson's mother, Virginia Cook, testified as a rebuttal witness for the state. She acknowledged she had a phone conversation with Patterson but noted it was in March or April 1991 and after his marriage to Victoria. She testified she told him, "if

Cindy gets a divorce, you know you are going to lose custody of the two little kids." Cook denied receiving divorce papers from Cynthia and denied telling her son she had received such documents.

The defense called its investigator, Teri Walker, as a surrebuttal witness. Walker testified that when she spoke with Cook, Cook admitted she had told Patterson that Cynthia was sending divorce papers, that they were "finalized," and that Patterson had lost custody of his children.

Prior to trial the defense and the prosecution stipulated there would be no reference to any domestic abuse allegations against Patterson by either Victoria or Cynthia. When Patterson testified, however, he repeatedly referred to Cynthia "leaving him" or "taking his children and leaving." In conference with the court, the prosecutor argued Patterson had implied that Cynthia had left a devastated and devoted father. The prosecutor was concerned the jury would be misled about their relationship and requested that Cynthia be permitted to testify only that she left Patterson under police protection. The trial court granted the state's request, and Cynthia so testified.

Thereafter, defense counsel moved for a mistrial on the grounds that this testimony was inadmissible and constituted prejudicial character evidence. The trial court denied the motion. Patterson was subsequently convicted of bigamy under Minn. Stat. § 609.355, subd. 2(3) (1990).

## ISSUES

I. Did the trial court err by refusing to give the "reasonable belief in good faith" defense instruction?

II. Did the trial court err by allowing limited rebuttal testimony indicating Patterson's first wife left him under police protection?

## DISCUSSION

### I

Patterson was convicted of bigamy pursuant to Minn.Stat. § 609.355, subd. 2(3) (1990), which provides that whoever "mar-

ries another outside this state with knowledge that either of them has a prior marriage that has not been dissolved, and then cohabits with the other in this state" is guilty of bigamy.

Patterson's counsel requested the jury be instructed in accordance with CRIMJIG 12.-51:

### BIGAMY–ELEMENTS

First, defendant lived with [Victoria Sue Patterson] in Minnesota under the representation or appearance of being married, having been married in another state.

Second, defendant [Donald Roy Patterson, Jr.] had entered a previous marriage.

Third, defendant, at the time of the marriage to [Victoria Sue Patterson] knew that [his] previous marriage had not been dissolved. Even if the marriage had not been dissolved, defendant did not know this if [he] reasonably believed in good faith that the marriage had been dissolved.

Fourth, defendant's act took place on or about [late April or early May 1991] in [Anoka] County.

If you find that each of these four elements has been proved beyond a reasonable doubt, defendant is guilty of bigamy. If [you find that] any of these four elements has not been so proved, defendant is not guilty.

He specifically requested the parenthetical instruction providing, "even if the marriage had not been dissolved, [the] defendant did not know this if [he] reasonably believed in good faith that the marriage had been dissolved." The trial court did not give the requested instruction. Rather, with respect to the knowledge requirement, the court instructed the jury that in order to find Patterson guilty they must find that "defendant, at the time of the marriage to Victoria Sue Patterson knew that [his] previous marriage had not been dissolved."

The defendant is entitled to an instruction on his theory of the case, if there is any evidence to support it. *United*

*States v. Nance,* 502 F.2d 615, 619 (8th Cir.1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975); *State v. Ruud,* 259 N.W.2d 567, 578 (Minn.1977), *cert. denied,* 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed.2d 85 (1978). The court, however, need not give the requested instruction if it determines the substance of the request is contained in the court's instruction. *Ruud,* 259 N.W.2d at 578. "Refusal to give a proposed jury instruction lies within the discretion of the trial court and there is no error absent an abuse of discretion." *State v. O'Hagan,* 474 N.W.2d 613, 620 (Minn.App.1991), *pet. for rev. denied* (Minn. Sept. 25, 1991).

■ Patterson maintains the jury was not instructed on his theory of the case. The requested instruction, he argues, would have clarified to the jury that if they believed his testimony they could not find him guilty. We find his argument unconvincing. His requested instruction seems implicit in the instruction the trial court actually gave. The trial court instructed the jury that an element of bigamy was that Patterson must be proved to have "known" that his marriage to Cynthia had not been dissolved when he married Victoria. The jury could not have decided that Patterson "knew" his first marriage was not dissolved and also conclude that he "reasonably believed in good faith" that Cynthia had divorced him. The jury must have disbelieved Patterson's claim that he thought Cynthia had divorced him.

Moreover, the instruction given was arguably more favorable than that requested. The requested instruction required him to prove a *"reasonable* belief in good faith," whereas the given instruction required the state to prove that Patterson "knew" the previous marriage had not been dissolved. Under the given instruction, there was no "reasonableness" issue, and the jury could have acquitted Patterson even though they thought it unreasonable for him to believe he was divorced. Under the requested instruction, the jury would have to convict if they concluded that Patterson's belief was unreasonable. We hold that even if failure to give the requested instruction is viewed

as error, in view of the import of the requested language, it was not prejudicial.

## II

■ Rulings on evidentiary matters generally rest within the sound discretion of the trial court. Even if the trial court errs in an evidentiary ruling, "[a] reversal is warranted only when the error substantially influences the jury to convict." *State v. Brown,* 455 N.W.2d 65, 69 (Minn.App.1990) (quoting *State v. Loebach,* 310 N.W.2d 58, 64 (Minn.1981)), *pet. for rev. denied* (Minn. July 6, 1990).

■ Having secured a favorable ruling precluding evidence of abusive behavior, Patterson overplayed his hand by making it appear that he was a devoted father and husband and that Cynthia simply took the children and moved out on him for no reason. Because of this false impression, the trial court allowed the state to recall Cynthia to testify that she left Patterson "under police protection." The trial court reasoned:

In other words, the Defendant opened the door himself by his own statement. It would have been unfair to the State's case to let that testimony that he offered, that he volunteered as a matter of fact, go unanswered, and so I permitted the State to respond with rebuttal testimony of Ms. O'Keefe.

On the other hand, I protected, I believe, the Defendant's rights because there is still, according to my recollection, no testimony of domestic violence.

Patterson now contends Cynthia's testimony violated Minn.R.Evid. 404(b), which prohibits introducing evidence of another crime or bad act "to prove the character of a person in order to show action in conformity therewith." We disagree.

■ We agree that, by playing the role of the devastated father and husband, Patterson "opened the door" to Cynthia's testimony. When a defendant's testimony creates a favorable but false impression of good character, the trial court has the discretion to allow rebuttal testimony. Cynthia's testimony was perfectly appropriate

rebuttal evidence. *See State v. Stewart*, 276 N.W.2d 51, 54 (Minn.1979) (where a defendant puts his character in issue, state may offer rebuttal evidence indicating defendant's poor character). Accordingly, we conclude that the trial court's decision allowing the limited testimony was not an abuse of discretion.

Affirmed.