STATE of Minnesota, Respondent,

v.

Jeffrey Allen LASNETSKI, Appellant.

No. A04–785.

Court of Appeals of Minnesota.

May 17, 2005.

Boyd A. Beccue, Kandiyohi County Attorney, Willmar, MN; and Mike Hatch, Attorney General, Kimberly Ross Parker, Assistant Attorney General, St. Paul, MN, for respondent.

Bruce M. Rivers, Rivers & Associates, P.A., Minneapolis, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge; TOUSSAINT, Chief Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

Appellant challenges his conviction of first-degree assault, arguing that the district court erred in admitting testimonial hearsay in violation of the Confrontation Clause of the United States and Minnesota Constitutions. Appellant also argues that the district court improperly excluded character evidence and that he was deprived of a fair trial due to prosecutorial

misconduct. Because we conclude that admission of the testimony did not violate the Confrontation Clause and objection to the testimony was otherwise waived by appellant, and that the district court did not abuse its discretion on the other issues, we affirm.

## FACTS

In the late afternoon of January 17, 2003, appellant Jeffrey Allen Lasnetski called his estranged wife, Darla Lasnetski, and told her that he was going to commit suicide. After appellant's daughter called 911, the Kandiyohi County Sheriff's Department was dispatched to the Lasnetski residence. Deputy Greg Stehn arrived at the scene and observed appellant standing by a truck in the driveway pointing a shotgun at his own head. In an effort to not escalate the situation, Stehn backed the squad car out of the driveway. While doing so, he observed appellant raise the shotgun to his shoulder and point it at Stehn. A few seconds later, Stehn heard the shotgun fire. While the shot did not strike Stehn or his squad car, he assumed appellant was shooting at the car.

Shortly thereafter, numerous law enforcement personnel arrived at the scene, and a roadblock was established to block traffic from approaching the residence. Mrs. Lasnetski arrived at the residence shortly after the shot was fired and was intercepted by Deputy Shawn Kujawa at the roadblock. While Mrs. Lasnetski was in Kujawa's squad car discussing the situation, appellant called her on a cell phone. Mrs. Lasnetski spoke with appellant several times. During the conversations with appellant, Kujawa coached Mrs. Lasnetski on how to talk to appellant in order to keep him from committing suicide. Mrs. Lasnetski pleaded with appellant that he needed to surrender. Appellant responded that he shot at the deputy and that he

would go to jail. Mrs. Lasnetski responded that no one was hurt and that everything would be okay. Appellant also told her that if the officers tried to approach the house, he would shoot them. Later, appellant stated that he would shoot at the officers in order to provoke them into shooting him.

Kujawa told Mrs. Lasnetski to keep appellant on the phone as long as possible. Eventually, appellant took an overdose of allergy medication and began coughing and vomiting. A flash-bang grenade was then detonated inside the residence, and law enforcement personnel entered to remove appellant.

Appellant was charged with first-and second-degree assault. Before trial, the state filed a motion to compel the testimony of Mrs. Lasnetski or, in the alternative, to allow Kujawa to testify as to Mrs. Lasnetski's out-of-court statements. The proposed testimony was that appellant told his wife, who in turn told Deputy Kujawa, that (1) appellant would not surrender because he shot at a deputy and was afraid he would be arrested for attempted murder; (2) if the officers tried to approach the house he would shoot them; and (3) he intended to go out of the house and start shooting in order to provoke law enforcement into shooting him because he wanted to die. The district court denied the state's motion to compel the testimony of Mrs. Lasnetski on the basis of the spousal privilege but permitted Kujawa to testify regarding Mrs. Lasnetski's phone conversations with appellant. The district court held that such testimony was admissible under the excited utterance exception to the hearsay rule and the residual exception for an unavailable declarant. See Minn. R. Evid. 803(2) (excited utterance); Minn. R. Evid. 804(b)(5) (residual exception).

During trial, Kujawa testified about his conversations with Mrs. Lasnetski in his

squad car along the lines proposed in the state's pretrial motion. Appellant did not object during the trial to Kujawa's testimony. In appellant's case-in-chief appellant testified and called Mrs. Lasnetski to testify regarding her conversations with appellant in Kujawa's squad car. Appellant also moved to introduce evidence of his reputation or character for truthfulness. The district court did not allow the evidence, finding that reputation for truthfulness was not relevant to the charged offenses and that appellant's credibility had not been attacked. The jury found appellant guilty of first-degree assault. This appeal followed.

## ISSUES

1. Did the district court err by allowing Kujawa to testify regarding Mrs. Lasnetski's phone conversations with appellant?

2. Did the district court err by excluding character evidence offered by appellant?

3. Was appellant denied a fair trial due to alleged prosecutorial misconduct?

## ANALYSIS

### I.

*Kujawa's Testimony*

■ Appellant contends that the out-of-court statements of Mrs. Lasnetski admitted into evidence through Kujawa's testimony should have been excluded because they constituted testimonial hearsay and violated appellant's rights to confrontation under the state and federal constitutions. The state argues that the evidence did not constitute testimonial hearsay and that appellant had otherwise waived his rights under the Confrontation Clause.

■ The evidentiary rulings of a district court lie within its sound judgment and will not be reversed absent an abuse

of discretion. *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003). If an error was committed in admitting evidence, we determine whether there is a reasonable possibility that the evidence significantly affected the verdict. *State v. Post,* 512 N.W.2d 99, 102 (Minn.1994). But if an evidentiary ruling involves constitutional error, we must look to the basis on which the jury rested the verdict and require a new trial unless the error is harmless beyond a reasonable doubt. *State v. Jones,* 556 N.W.2d 903, 910 (Minn.1996).

In the recent case of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court reviewed the admissibility of hearsay statements in criminal trials. In *Crawford,* the trial court admitted hearsay evidence derived from the custodial interrogation of the defendant's wife, who was a witness to a stabbing but was unavailable to testify because of marital privilege. *Id.* at 38, 124 S.Ct. at 1356–57. The trial court admitted the wife's tape-recorded statements as an exception to the hearsay rule. *Id.* at 40, 124 S.Ct. at 1358. The Supreme Court reversed, holding that interrogations by law enforcement officers fall squarely within the category of testimonial hearsay. *Id.* at 68, 124 S.Ct. at 1374. Accordingly, the Sixth Amendment Confrontation Clause analysis turns on whether a particular statement is "testimonial" in nature. The *Crawford* Court held that testimonial out-of-court statements of witnesses may only be admitted where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine. *Id.* at 68, 124 S.Ct. at 1374.

Although the *Crawford* Court declined to provide a definition of "testimonial," it did note three formulations of "core" testimonial hearsay: (1) "*ex parte* in-court testimony or its functional equivalent ... such as affidavits, custodial examinations,

prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements" of the same nature "contained in formalized testimonial materials"; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Id.* at 51–52, 124 S.Ct. at 1364 (quotations omitted). As a corollary to the final category, the Court added that "[s]tatements taken by police officers in the course of interrogations" are similarly testimonial. *Id.* at 52, 124 S.Ct. at 1364.

Based on our review of *Crawford,* Mrs. Lasnetski's statements to Kujawa contemporaneously repeating what appellant allegedly stated to her do not constitute "testimonial" hearsay. First, the testimony clearly is not *ex parte* in-court testimony, its functional equivalent, or extrajudicial statements contained in formalized testimonial materials that would qualify under either of the Court's first or second formulations of "core" testimonial hearsay.

Second, the statements were not made under circumstances that would lead an objective witness reasonably to believe that the statements would be available for use at a later trial. Here, Mrs. Lasnetski was not in custody and was not the subject of a *Miranda*-warned interrogation. Her statements were not the product of any police interrogation of her or of appellant. Instead, Mrs. Lasnetski was on her cell phone in the squad car with Kujawa for the sole purpose of persuading appellant not to take his life but to surrender. Under these exigent circumstances, an objective witness would not contemplate that what was expressed to Kujawa would be used at a later trial. Given the stress of the moment, a reasonable, objective wit-

ness would not even contemplate the possibility of a later trial, but would be solely engaged in preventing a suicide. To hold otherwise would be to construe *Crawford* as holding that every exigent statement made to law enforcement personnel is "testimonial."

Our facts are more analogous to a 911 call in *State v. Wright,* 686 N.W.2d 295 (Minn.App.2004), *review granted* (Minn. Nov. 23, 2004), than to a formalized statement to police. In *Wright,* we concluded that statements made by assault victims during a 911 call were not testimonial because the victims' excited utterances "moments after an assault simply do not qualify as knowing responses to structured questioning in an investigative environment in which the declarant reasonably expects that the responses will be used in later judicial proceedings." *Id.* at 302. Like *Wright,* the statements made in this case lack the formality of "core" testimonial hearsay contemplated by *Crawford.* Therefore, we conclude that none of Mrs. Lasnetski's statements made to the police are "testimonial" hearsay under *Crawford.*

■■■ The state argues that, even if Mrs. Lasnetski's statements to Deputy Kujawa were testimonial under *Crawford,* appellant waived his rights under both the Confrontation Clause and the spousal-immunity privilege by calling his wife to testify at trial. We agree. A defendant may intelligently waive a fundamental constitutional protection. *State v. Blom,* 682 N.W.2d 578, 617 (Minn.2004); *see also United States v. Mezzanatto,* 513 U.S. 196, 201, 115 S.Ct. 797, 801, 130 L.Ed.2d 697 (1995) ("A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution."). Specifically, a defendant may waive his right to confrontation, as well as the right against self-incrimination and the right to a jury trial. *See*

*State v. Worthy*, 583 N.W.2d 270, 277–78 (Minn.1998) (holding that when defendant voluntarily leaves courtroom, he waives right under Confrontation Clause to be present at trial); *State v. Provost*, 490 N.W.2d 93, 96 (Minn.1992) (stating defendant may intelligently waive right against self-incrimination); *State v. Ross*, 472 N.W.2d 651, 653 (Minn.1991) (stating that defendant may waive right to jury trial if waiver is knowing, intelligent, and voluntary).

A waiver "is an intentional relinquishment of a known right or privilege, and its validity depends ... upon the particular facts and circumstances surrounding the case." *Blom*, 682 N.W.2d at 617 (quoting *State v. Richards*, 456 N.W.2d 260, 264 (Minn.1990)). The waiver need not be explicit but rather may be inferred from a defendant's conduct. *Id.* Here, appellant's decision to call his wife to testify was a trial strategy to take his chances with the jury. Mrs. Lasnetski then testified regarding her statements to Kujawa and, therefore, appellant was afforded the opportunity to confront the declarant.

We recently considered this issue in *State v. Courtney*, 682 N.W.2d 185 (Minn. App.2004), *rev'd on other grounds*, 696 N.W.2d 73 (Minn.2005), where we applied *Crawford* to statements made by an assault victim to a police officer. *Id.* at 196. In *Courtney*, the victim was called by the defense on the last day of trial and was subject to direct and cross-examination regarding her statements made to the officer. *Id.* For this reason, we concluded that the victim's statements were properly admitted by the district court. *Id. See also Crawford*, 541 U.S. at 59, 124 S.Ct. at 1369 n. 9 ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.... The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.") (citation omitted); *State v. Plantin*, 682 N.W.2d 653, 660 n. 2 (Minn.App.2004) (holding *Crawford* inapplicable because declarant testified at trial), *review denied* (Minn. Sept. 29, 2004); *State v. Tate*, 682 N.W.2d 169, 176 n. 1 (Minn.App.2004) (stating that because declarant "testified at trial and was subject to cross-examination concerning the statement, the Confrontation Clause does not apply to invalidate the hearsay exception"), *review denied* (Minn. Sept. 29, 2004).

Appellant argues that he was forced to call Mrs. Lasnetski to testify because the district court's erroneous pretrial ruling allowed Kujawa's testimony but barred Mrs. Lasnetski from testifying because of the spousal privilege. Essentially, appellant argues that his waiver was not voluntary. We reject that argument. Appellant had the choice of not calling Mrs. Lasnetski to testify and asserting his constitutional rights in an appeal of any conviction. Instead, appellant made a trial strategy decision that he would waive his constitutional rights and let the jury decide. Because appellant chose to call Mrs. Lasnetski to testify, we conclude that the waiver of his Confrontation Clause and spousal-privilege rights was voluntary.

We also agree with the state's argument that Mrs. Lasnetski's repetition to Kujawa of statements made by appellant waived the spousal privilege as to those statements. *See* Minn.Stat. § 595.02, subd. 1(a) (2002) ("A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent"). The spousal privilege is intended to protect spouses from testifying against each other, not to prevent a third party testifying to a conversation held between the husband and wife. *State v. Schifsky*, 243

Minn. 533, 539, 69 N.W.2d 89, 93–94 (1955). And the privilege does not prevent a third-party witness from testifying to communications between the spouses even if the presence of the third party is not visible to a husband or wife. *Id.* at 539, 69 N.W.2d at 94. Here, Kujawa testified to conversations Mrs. Lasnetski voluntarily repeated to him that she originally had with appellant. Therefore, the spousal privilege does not bar the testimony.

█ Finally, the state argues that (1) the statements made by appellant to Mrs. Lasnetski are excluded from the definition of hearsay as admissions by a party-opponent and that (2) the statements made by Mrs. Lasnetski to Kujawa are admissible as an excited utterance, or under the residual exception to the hearsay rule. We agree. Hearsay included within hearsay is not excluded from evidence if each part of the combined hearsay statements qualifies as an exception or is otherwise excluded from the hearsay rule. Minn. R. Evid. 805. First, appellant's statement to Mrs. Lasnetski that he shot at Stehn constitutes an admission by a party-opponent to one of the elements of first-degree assault and, therefore, is not hearsay. *See* Minn. R. Evid. 801(d)(2)(A).

█ Second, the district court admitted Mrs. Lasnetski's statements to Kujawa as excited utterances. *See* Minn. R. Evid. 803(2) (permitting hearsay consisting of "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," regardless of whether declarant is available to testify). The district court concluded that Mrs. Lasnetski reported her conversations with appellant during a stressful situation in which her primary concern was the safety of her husband. At trial, Mrs. Lasnetski testified that this situation was the most stressful event of her entire life, analogizing the agony she heard in her husband's voice to an injured animal or one of her children being tortured. Additionally, the events took place over the course of many hours, exacerbating the stressful nature of the situation. It was in the context of this exceptionally traumatic situation that she reported appellant's statements to Kujawa. Based on these facts, we agree with the district court that Mrs. Lasnetski's nontestimonal hearsay statements to Kujawa qualify as excited utterances and, therefore, are independently admissible as an exception to the hearsay rule.[1]

## II.

### Character Evidence

█ Appellant contends the district court erred in refusing to allow him to present witnesses to testify about his character for truthfulness. At a pretrial hearing, appellant's counsel made a motion requesting that character evidence pertaining to appellant's truthfulness or honesty be admitted at trial. The district court held that appellant had a right to present general character evidence—subject to rebuttal by the state—but could not present character evidence of truthfulness or honesty, because such evidence was not a pertinent trait of the offense charged. *See* Minn. R. Evid. 404(a)(1) (allowing accused to present character evidence that is of a pertinent trait of accused's character); *State v. Miller*, 396 N.W.2d 903, 906 (Minn.App.1986) ("Only 'pertinent traits'—those involved in the of-

---

1. The district court also determined that Kujawa could testify to Mrs. Lasnetski's statements based on the "catch-all" exception to the hearsay rule. Minn. R. Evid. 804(b)(5): Because we conclude that the statements are admissible as excited utterances, we do not reach this issue.

fense charged—are within the scope of Minn. R. Evid. 404(a)(1).").  Additionally, the district court found that appellant could not introduce evidence of truthfulness or honesty under Rule 608, because at the end of its case-in-chief the state had not yet attacked appellant's character for truthfulness.  *See* Minn. R. Evid. 608(a)(2) ("[E]vidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.").

"Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *Amos*, 658 N.W.2d at 203.  Appellant carries the burden of establishing that the district court abused its discretion and that the error was prejudicial.  *Id.* We agree that appellant's character for truthfulness is not a pertinent trait of either assault in the first or second degree.  *See* Minn.Stat. §§ 609.221, 609.222 (2002) (listing assault factors such as great bodily harm and assault with a dangerous weapon).  Additionally, the state did not put appellant's character in issue during or after its case-in-chief, so appellant could not introduce evidence of truthfulness under Minn. R. Evid. 608(a)(2).  Thus, the district court did not abuse its discretion by excluding evidence regarding appellant's character for truthfulness.

### III.

*Prosecutorial Misconduct*

▮▮▮▮ Appellant next argues that the state deprived him of his right to a fair trial by engaging in prejudicial misconduct.  A defendant alleging prosecutorial misconduct generally will not be granted a new trial if the misconduct was harmless beyond a reasonable doubt.  *State v. Atkins*, 543 N.W.2d 642, 648 (Minn.1996).  Because appellant failed to object at trial

to the alleged misconduct and did not seek a curative instruction, we review the allegations under the plain-error rule, under which we ask whether the alleged misconduct affected substantial rights that had the effect of depriving the appellant of a fair trial.  *Rairdon v. State*, 557 N.W.2d 318, 323 (Minn.1996).

▮▮▮▮ Essentially, appellant asserts two instances of prosecutorial misconduct.  First, appellant argues that the prosecutor's questioning of appellant and Mrs. Lasnetski regarding their "severe marital problems" constitutes misconduct.  Prior to trial, appellant made a motion in limine, which the district court granted, to exclude all references to an alleged extra-marital affair of Mrs. Lasnetski.  During the state's case no reference was made to the alleged extra-marital affair.  But appellant's counsel opened the door to questioning by asking appellant and Mrs. Lasnetski about marital difficulties between the two that resulted in their separation and appellant's depression.  On cross-examination, the prosecutor questioned the witnesses regarding the marital difficulties and a rumor about their relationship but made no reference to the alleged extra-marital affair.

When appellant's counsel raised the marital relations issue in his direct examination of appellant and Mrs. Lasnetski, the prosecutor was free to address the same issue on cross-examination of those witnesses.  *See State v. Patterson*, 493 N.W.2d 577, 580 (Minn.App.1992) ("[T]he Defendant opened the door himself by his own statement.  It would have been unfair to the State's case to let that testimony that he offered, that he volunteered as a matter of fact, go unanswered[.]").  Accordingly, we conclude that the prosecutor's questioning of appellant and Mrs.

Lasnetski did not constitute prosecutorial misconduct.

■ Next, appellant argues that the prosecutor committed misconduct four times during closing argument. First, the prosecutor stated: "You've heard a lot of stuff here in the last, third day coming up here now which probably isn't very important.... I believe a lot of it was really hiding the ball." The state contends that these statements related to the importance of the evidence presented by appellant and were not the prosecutor's personal opinions concerning the merits of the case or the credibility of the witnesses.

■ During closing argument, the prosecutor is afforded considerable latitude and the law does not require that a colorless argument be made. *State v. Smith*, 541 N.W.2d 584, 589 (Minn.1996). The prosecutor has "the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." *Id.; but see State v. Prettyman*, 293 Minn. 493, 495, 198 N.W.2d 156, 158 (1972) (stating it is impermissible for prosecutor to make comments such as "I think"). Based on the strength of the evidence against appellant and the otherwise balanced nature of the case presented to the jury, it is unlikely these limited comments significantly prejudiced appellant and affected the jurors' ultimate decision. Consequently, we conclude that the prosecutor's comments did not rise to the level of plain error.

■ Second, appellant argues that the prosecutor committed misconduct by misstating the burden of proof. *See State v. Hunt*, 615 N.W.2d 294, 302 (Minn.2000) (misstating burden of proof constitutes prosecutorial misconduct). The prosecutor made the following statement:

I'm before you here now in my closing arguments to explain to you what the final charges are in this matter, what the elements of those charges are, and what I believe the facts are with regard to those elements of those crimes to assist you in determining guilt or innocence of the defendant, Jeffrey Lasnetski.

The state argues that the burden of proof was not misstated, but that even if it was, the district court's jury instructions were sufficient to express the proper burden. We agree. By noting the jury would be "determining guilt or innocence," the prosecutor was not implying that there was no burden of proof as to those alternatives.

■ A prosecutor's misstatement of the burden of proof will not require reversal if the district court fully instructed the jury on the correct burden of proof. *State v. Trimble*, 371 N.W.2d 921, 926–27 (Minn. App.1985), *review denied* (Minn. Oct. 11, 1985). Here, because the district court accurately and sufficiently instructed the jury on the burden of proof, we conclude that any misstatement by the prosecutor was not prejudicial.

■ Third, appellant challenges the prosecutor's comments that much of the evidence presented was meant to "hid[e] the ball," and that the jury should not be misled by appellant's counsel's stories and arguments. Appellant asserts that these comments constitute disparagement of appellant's counsel and question his trustworthiness.

The prosecutor's comments, however, do not rise to the level of disparaging appellant's counsel. *See State v. Brown*, 368 N.W.2d 12, 13 (Minn.App.1985) (holding that prosecutor's characterization of defense counsel's argument as a "smoke screen" or "non-issue" was not improper), *review denied* (Minn. July 11, 1985). Instead, the prosecutor's comments were an

attempt to counter specific statements or arguments previously made by appellant's counsel. We have reviewed the record and find no credible evidence that the prosecutor challenged the trustworthiness of appellant's counsel, suggested that counsel was trying to mislead the jury, or disparaged counsel.

Fourth, appellant argues that the prosecutor minimized the importance of the trial by stating: "I know this has taken a long time already and I do also know that this is New Year's Eve and you perhaps have some other things on your mind here as well." Appellant argues that this statement improperly invited the jury to dispose of the case as quickly as possible. But appellant fails to provide any legal support for this claim. The prosecutor's statement could also be interpreted as a gesture of appreciation, acknowledging that the jury's service was being performed over the holidays and during a time when the jurors might have other things occurring in their lives. Therefore, we conclude that this comment did not constitute misconduct.

Appellant asserts other claims of prosecutorial misconduct, for example, that the prosecutor improperly advised the jury regarding issues of intent and mental capacity, as well as arguing that appellant would state whatever was necessary to be found not guilty. We have carefully reviewed appellant's claims of prosecutorial misconduct during closing argument and conclude that none of the claims rise to the level of plain error.

## DECISION

Because we conclude that Mrs. Lasnetski's excited utterances were not "testimonial" hearsay under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), it was not error for the district court to admit those statements.

Additionally, when appellant called Mrs. Lasnetski to testify, he waived his right to challenge the admission of her out-of-court statements under the Sixth Amendment's Confrontation Clause. The district court also did not abuse its discretion by excluding appellant's offered character testimony regarding truthfulness because the testimony was not pertinent to the charged crimes and the prosecutor did not attack appellant's propensity for truthfulness. Finally, under the plain-error rule, appellant failed to establish prosecutorial misconduct that deprived him of a fair trial.

**Affirmed.**