STATE of Minnesota, Respondent,

v.

Karrie Anne SMITH, Appellant.

No. C6–96–1832.

Court of Appeals of Minnesota.

May 27, 1997.

Hubert H. Humphrey, III, Attorney General, Julio R. Barron, Assistant Attorney General, St. Paul, for Respondent.

Marvin Ketola, Carlton County Attorney, Carlton, for Respondent.

Steven P. Russett, Assistant State Public Defender, St. Paul, for Appellant.

Considered and decided by WILLIS, P.J., and RANDALL and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Karrie Anne Smith was convicted by a jury of third-degree assault under Minn.Stat. § 609.223, subd. 1 (1994) (assault with infliction of substantial bodily harm). On appeal, she argues the trial court committed prejudicial error when it admitted the bartender's out-of-court statement to a police officer immediately after the incident and when it allowed a prosecution witness to testify that she had been bitten by appellant in 1991. We agree and reverse the conviction.

## FACTS

In the early morning hours of April 21, 1994, several fights broke out in a bar in northern Minnesota. The final altercation occurred between appellant and L.D.

According to L.D., appellant initiated the fight by charging at her. L.D. testified that she managed to get on top of appellant and that as she had appellant pinned to the floor, appellant leaned forward and bit her in the eye. L.D. testified that when she screamed and grabbed her face, appellant flipped her over, got on top of her, and began to pound her head into the floor.

According to appellant, L.D. initiated the fight by yelling profanities at her, grabbing her hair, throwing her onto the floor, and sitting on top of her. Appellant claimed that L.D. struck her at least 11 times. Appellant testified that she eventually got on top of L.D. and struck her several times, but appellant denied biting L.D.

L.D.'s husband and sister-in-law, S.D., both testified for the state. Neither they nor

any other witnesses actually saw appellant bite L.D.

Soon after appellant and the other patrons left the bar, the police arrived. One police officer testified that when he arrived, L.D. told him that appellant bit her in the eye. The officer testified that the injury appeared consistent with a bite wound and that he advised L.D. to go to the hospital. Over appellant's objection, the officer also testified that the bartender had told him that "[L.D.] didn't do anything."

L.D. went to the emergency room and received 13 stitches around her eye. A few days later, she was hospitalized and given intravenous antibiotics. She testified that besides the permanent scar she has on her eyelid, she has some problems with her night vision and with a damaged tear duct. A general surgeon who treated L.D. a few days after the incident testified that her wound was consistent with a human bite.

S.D. was allowed to testify that appellant bit her during a fight in 1991 and that as a consequence, she has scars on her forehead and forearm. When asked on cross-examination about this incident, appellant acknowledged that she had been in a fight with S.D. in 1991, but denied biting her.

### ISSUES

I. Did the trial court commit prejudicial error in admitting *Spreigl* evidence under Minn. R. Evid. 404(b)?

II. Did the trial court commit prejudicial error in admitting the bartender's out-of-court statement under Minn. R. Evid. 804(b)(5)?

### ANALYSIS

 Rulings on evidentiary matters rest within the sound discretion of the trial court and will not be overturned absent a clear abuse of that discretion. *See State v. Kelly,* 435 N.W.2d 807, 813 (Minn.1989). If evidence is erroneously admitted and an abuse of discretion is found, this court's

> role is to examine the entire trial record and determine "whether there is a reasonable possibility that the wrongfully admitted evidence significantly affected the

verdict; * * * if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the evidence had not been admitted, then the error in admitting the evidence was prejudicial error."

*State v. Bolte,* 530 N.W.2d 191, 198 (Minn. 1995) (quoting *State v. Post,* 512 N.W.2d 99, 102 n. 2 (Minn.1994)) (footnote omitted).

### I.

 Two days into trial, S.D. told the prosecutor that appellant bit her during a fight in the summer of 1991. The prosecutor sought to elicit this information during his direct examination of S.D. to show how she knew appellant and as *Spreigl* evidence. Defense counsel objected, arguing that she had no notice, that the evidence was extremely damaging, and that S.D.'s failure to come forward with the information earlier rendered her allegations inherently suspect. Defense counsel was given an opportunity to question S.D. outside the presence of the jury. S.D. testified that she reported the incident to police in 1991, but did not pursue criminal charges because she "was in the process of moving." She also showed her scars to defense counsel and the trial court. The trial court admitted the evidence "on the basis of prior knowledge, but also on the issue of mistake or intent."

 Evidence of prior crimes or bad acts, while generally inadmissible to prove an accused committed the present offense, may be admitted to show motive, intent, absence of mistake or accident, identity, or common scheme or plan. *See* Minn. R. Evid. 404(b); *State v. Spreigl,* 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965). Because of the high potential for unfair prejudice, a number of procedural safeguards must be met, including (1) sufficient pretrial notice, (2) clear and convincing evidence of the defendant's participation in the other crime, and (3) cautionary instructions both at the time the evidence is received and in the final charge. *See State v. Slowinski,* 450 N.W.2d 107, 113–14 (Minn. 1990).

### A. Inadequate Notice

No pretrial notice was given in this case. While S.D. did not disclose this incident to the prosecutor until two days into trial, she also claimed that she had filed a police report regarding the 1991 incident. Because the state had nearly two years to investigate and prepare for appellant's trial, a diligent prosecutor could have discovered this evidence prior to trial. While defense counsel was allowed to voir dire S.D. on the issue, appellant was still denied an opportunity to investigate the prior incident and present evidence, other than her own testimony, to rebut S.D.'s allegations. *See Spreigl*, 272 Minn. at 495–97, 139 N.W.2d at 172–73; *see also Bolte*, 530 N.W.2d at 199; *State v. Doughman*, 384 N.W.2d 450, 455–56 (Minn. 1986) (reversible error to admit evidence of prior arson when defendant had no notice of state's intent to introduce such evidence and evidence may have resulted in unjust verdict).

### B. Evidence Not Clear and Convincing

The evidence that appellant bit S.D. in 1991 was not clear and convincing. Although appellant acknowledged that the two had been in a fight in 1991, she denied biting S.D. While S.D. testified under oath and she showed two scars which she claimed resulted from appellant's prior act, her allegations are highly suspect, given that she is the victim's sister-in-law and that she offered no explanation for delaying the disclosure. Given the questionable and uncorroborated nature of S.D.'s testimony, the trial court should have given appellant the benefit of the doubt and excluded the evidence. *See Bolte*, 530 N.W.2d at 197.

### C. No Cautionary Instructions

■ The trial court failed to give cautionary instructions either when the evidence was received or during final instructions. While appellant failed to request such instructions, a trial court has a duty sua sponte to give cautionary instructions. *See State v.*

*Frisinger*, 484 N.W.2d 27, 31 (Minn.1992). The absence of cautionary instructions was particularly prejudicial here because the prosecutor emphasized the evidence during his closing argument and encouraged the jury to misuse that evidence:

> And, you can consider this: [S.D.] testified back in 1991 that this same individual had bitten her. Now, you can't use that bite as a basis to convict in this case, but what you can consider is did she act consistently on this occasion as how she had acted on another occasions. In addition, I had asked about—asked the Defendant whether or not she had bitten anybody else, and she said, Yeah, she bit her boyfriend. * * * And my recollection was that was about a year ago.[1]

It was improper for the prosecutor to suggest that he had established appellant as the type of person who would commit the charged offense. The trial court admitted the evidence solely for the purpose of showing appellant's intent; other-crime evidence is never admissible to show that a defendant acted in conformity therewith on a particular occasion. *See* Minn. R. Evid. 404(b).

### D. Error Not Harmless

■ The erroneous admission of this other-crime evidence was clearly damaging. By arguing this evidence was needed to prove its case, the state implicitly acknowledged that the remaining evidence of appellant's guilt was not overwhelming; it should not now be heard to argue that any error in its admission was harmless due to the strength of other evidence of appellant's guilt. Further, the prosecutor emphasized the other-crime evidence in his closing argument and even encouraged its misuse by the jury. Under these circumstances, admission of this evidence was highly prejudicial to appellant's case and was not harmless.

### II.

■ The police officer who arrived at the bar immediately after the incident testified

---

1. This other biting incident was elicited during cross-examination. Appellant argues that although no objection was made, this evidence also was inadmissible because the prosecutor did not comply with the procedural safeguards and because his clear intent was to prove that appellant was the type of person who would commit the charged offense.

that the bartender told him that "[L.D.] didn't do anything." The trial court ruled, over appellant's objection, that the statement was admissible under Minn. R. Evid. 804(b)(5). That rule requires: (1) the declarant is unavailable; (2) the statement has circumstantial guarantees of trustworthiness; (3) the statement is offered as evidence of a material fact; (4) the evidence is more probative on the point for which it is offered than other evidence that the proponent can procure through reasonable effort; (5) admission of the statement serves the interests of justice and the purposes of the rules of evidence; and (6) the adversary is given advance notice of the intention to offer the statement, details about the content of the statement, and the name and whereabouts of the declarant. See id.

### A. Witness Not "Unavailable"

■ The state must show it made a diligent, good-faith effort to locate and return a witness. See Ohio v. Roberts, 448 U.S. 56, 75–76, 100 S.Ct. 2531, 2543–44, 65 L.Ed.2d 597 (1980) (unavailability established when record showed prosecutor attempted to subpoena witness on five separate occasions over period of several months, had no clear indication of witness's whereabouts, and talked to witness's mother in effort to locate witness); State v. French, 400 N.W.2d 111, 115–16 (Minn.App.1987) (unavailability not established when state did not attempt to secure witness's attendance because it would have been inconvenient for witness and his employer), review denied (Minn. Mar. 25, 1987).

■ As proof that the bartender was unavailable, the state merely presented the certificate of unserved process with a notation that process was returned because the bartender had moved to Georgia and his new address was unknown. The state apparently made no other efforts to secure the bartender's Georgia address. Absence from the state alone is insufficient to establish a witness's unavailability. Cf. State v. Shotley, 305 Minn. 384, 386, 233 N.W.2d 755, 757–58 (1975) (admission of former testimony by witness who moved to Ohio was error, albeit harmless, when state made only "superficial" attempts to locate witness). The state has failed to show its efforts to secure the bartender's presence were diligent and reasonable. See State v. Carlson, 408 N.W.2d 192, 194 (Minn.App.1987) (witness not unavailable under rule 804 because not served with subpoena when service could have been made if state had ascertained witness's correct address).

### B. Reliability of Statement Questionable

The trial court determined the bartender's statement was admissible because he was a "neutral third party" who summoned the police and made his statement to the officer shortly after the melee in the bar. The record also shows, however, that the bartender was a "good friend" of L.D.'s, according to L.D.'s statement to police later that morning, and that the bartender himself was assaulted by a patron throwing ashtrays at him. Under these circumstances, the reliability of the bartender's statement is questionable.[2]

### C. Statement Not Probative

It was undisputed that there were 20 to 30 other people in the bar at the time of the incident. Nevertheless, the only eyewitnesses called by the state were L.D., her husband, and S.D. None of these witnesses was "neutral." Under these circumstances, the state has failed to show that the bartender's statement as a "neutral" third-party was more probative than other evidence the state could have procured through reasonable efforts.

2. The state also argues that the bartender's statement to the officer has indicia of reliability because the bartender was deposed in a civil action brought by L.D. against appellant. This deposition, however, was not admitted into evidence here and is not part of this record. Indeed, appellant filed a motion in limine to exclude the deposition; the trial court apparently found it unnecessary to rule on this motion because it was allowing the bartender's statement that "[L.D.] didn't do anything." While the trial court was aware of the existence of the deposition, we cannot speculate as to its contents or whether the bartender's deposition testimony was consistent with his out-of-court statement.

### D. Interests of Justice Not Served

Exceptions to the hearsay rule are premised on the assumption that cross-examination would be of marginal utility to the defendant. Appellant's ability to cross-examine the bartender in front of the jury was critical for her possibly to clarify the meaning of his statement, determine exactly what he saw, and bring to light any facts bearing on his credibility.

### E. Insufficient Notice

Although the state notified the defense of its intention to introduce the bartender's statement, it did not provide the details of that statement. The officer did not include the bartender's statement that "[L.D.] didn't do anything" in his police report, nor did the state otherwise disclose this specific statement to the defense. We do not believe that sufficient notice was given of the contents of the bartender's statement.[3]

### F. Error Not Harmless

■ The state characterized the bartender as a neutral, third party. Again, by seeking to introduce the bartender's out-of-court statement, the state asserted that his statement was crucial to its case and that without it, the jury would be left with two conflicting accounts presented by biased, non-neutral parties. Under these circumstances, we cannot conclude that erroneous admission of the bartender's statement was harmless.

### DECISION

The trial court committed prejudicial error when it allowed S.D. to testify that appellant bit her during a fight in 1991 and when it admitted the bartender's out-of-court statement that "[L.D.] didn't do anything." The conviction is therefore reversed.

**Reversed.**

---

**3.** Again, the state argues that appellant had sufficient notice of the bartender's statement because appellant possessed the bartender's sworn deposition; again, because that deposition is not part of the record, this court cannot determine whether the bartender's deposition constituted sufficient notice of his out-of-court statement to the police officer.