STATE of Minnesota, Respondent,

v.

Muna Dayib AHMED, Appellant.

No. A04–2240.

Court of Appeals of Minnesota.

Jan. 17, 2006.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, MN, for respondent.

Fred A. Reiter, Fred A. Reiter & Associates, Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; TOUSSAINT, Chief Judge; and WORKE, Judge.

## OPINION

TOUSSAINT, Chief Judge.

Appellant Muna Dayib Ahmed challenges her convictions of two counts of criminal vehicular operation (gross misdemeanor), in violation of Minn.Stat. § 609.21, subd. 2b(1) (2004), arguing that her rights under the Confrontation Clause were violated and that various other misconduct and error occurred. Because we conclude that appellant's Confrontation Clause rights were not violated and that her arguments on all other issues fail, we affirm.

## FACTS

On February 29, 2004, A.A. drove to St. Paul and picked up S.W. and drove S.W. to Minneapolis, where A.A. went inside a building for several minutes. A.A. returned to the car, and as they drove onto Interstate 94, a car began chasing A.A.'s vehicle. The chase lasted approximately 20 minutes. A.A. and S.W. exited the interstate, and the car followed them and attempted to hit them. The chasing car ultimately hit A.A.'s vehicle and caused it to roll over several times.

Appellant was charged with two counts of assault in the second degree (felony), in violation of Minn.Stat. §§ 609.222, subd. 1, 609.101, subd. 2, 609.11 (2004), and two counts of criminal vehicular operation (gross misdemeanor), in violation of Minn. Stat. § 609.21, subd. 2b(1) (2004). After a jury trial, appellant was acquitted of the two assault charges and convicted of the two criminal-vehicular-operation charges.

A.A. did not testify at trial. The state indicated that it had served him with a subpoena twice by leaving the subpoena at A.A.'s home with a family member (who indicated that A.A. lived there and would return shortly). Further, the state witness-victim advocate telephoned A.A. to remind him to attend the trial and that failing to respond to the subpoena is a crime. S.W. testified that A.A. told her he was not going to testify. A bench warrant was issued but did not procure A.A.'s presence at trial. The district court found that A.A. was unavailable.

According to S.W., A.A. stated during the chase that appellant, his ex-girlfriend, was the driver of the other car. The state indicated to the court that A.A. called the police and recanted this identification. The district court made a preliminary ruling excluding A.A.'s statements to S.W. on the basis that they lacked reliability and that appellant had no opportunity to confront the declarant. S.W. testified at trial that she had several opportunities to view the driver of the chasing vehicle and identified the driver as appellant.

On cross-examination, appellant's counsel asked S.W. whether she remembered telling Detective Stephen Nelson of the Brooklyn Park Police Department sometime after the accident that she could not identify the driver of the other vehicle, and S.W. responded in the affirmative. In a bench conference, the state then requested permission to use hearsay from A.A. to explain why S.W. did not identify the driver of the car for Detective Nelson. The district court concluded that "the door [had] been opened" and allowed S.W. to

testify that A.A. called her and persuaded her that the driver of the other vehicle was not appellant.

Detective Nelson then testified, first describing his investigation of the cars involved in the incident and then stating his conclusion that it was appellant's car that collided with A.A.'s car. Nelson then testified that S.W. indicated on a later date that she could not identify the driver of the vehicle because A.A. had persuaded her that the driver was not appellant.

The district court heard testimony from S.W. outside the presence of the jury to determine whether A.A.'s statements to S.W. identifying the driver of the vehicle could be admitted under a hearsay exception. S.W. testified that A.A. called her and asked her not to testify against appellant because he and appellant "just got back together." According to S.W., A.A. called her again later and threatened that appellant's family would beat her up if she testified against appellant. The district court then reversed its prior ruling and ruled that it would allow A.A.'s statements identifying the driver of the other vehicle as his former girlfriend, appellant, as excited utterances and then-existing emotional or physical conditions, under Minn. R. Evid. 803.

Officer Aaron Albright of the Brooklyn Park Police Department then testified, over appellant's objection, that S.W. told him the driver of the other vehicle was A.A.'s former girlfriend and that she knew A.A.'s former girlfriend was the driver because A.A. told her so. The state recalled S.W., who testified that A.A. told her during the chase that the driver of the vehicle was appellant, A.A.'s former girlfriend. S.W. testified that she identified the driver to the police at the scene of the accident as appellant based on A.A.'s statement.

Appellant testified that on February 29, 2004, she had four friends staying with her. She testified that her father called and asked her to come over and help him, and that she agreed. Appellant conceded that her vehicle was involved in the collision, but testified that she was not the driver and had left her keys on the refrigerator in her apartment, where someone must have picked them up. Appellant's father testified that appellant was with him during the chase because he was ill. He testified that he picked appellant up, rather than have her drive, because there are few available parking spaces near his apartment. Appellant's cousin testified that appellant's father called and asked her to come help him, but that she suggested he call appellant. Appellant's cousin also testified that she talked to appellant at her father's apartment on the phone around the time of the chase.

In its closing statement, the state discussed the elements of the jury instruction on witness credibility and noted relevant facts from the case for each element. At the end of eight transcribed pages, the state concluded that it was unlikely that appellant's alibi defense was truthful:

> Surely everyone recalls [juror W.], a man, a prospective juror, very interesting prospective juror; and [juror W.] informed us that he had identical triplets, and he informed us that the odds of having identical triplets were 1 in 14 million.
>
> And I would suggest to you that when you take into consideration all of the factors in evaluating the credibility of these respective witnesses, that the chances that Ms. Ahmed's alibi is the truth here are similarly astronomical.

Appellant responded in her closing argument: "The point of fact is that [juror W.] did have identical triplets. That's a point. He actually did have that."

Following closing arguments, the district court instructed the jury on various aspects of the case. The court stated that the attorneys' arguments were not evidence and that if the attorneys' version of the evidence differed from the jurors' recollections, the jurors should disregard the attorneys' statements.

The jury began deliberations late in the afternoon of Tuesday, August 31, 2004. After about an hour, the jury returned to the courtroom. The district court answered two jury questions and excused the jury for the day. The jury deliberated all day the following day. In the morning on Thursday, September 2, the jury indicated to the court that they were not able to reach a unanimous verdict. The court responded by reading from Minnesota Practice, CRIMJIG 3.04 (1999):

> In order for you to return a verdict, whether guilty or not guilty as to each charge, each juror must agree to that verdict. Your verdict must be unanimous. You should discuss the case with one another and deliberate with a view to reaching an agreement if you can do so without violating your individual judgment. You should decide the case for yourself but only after you have discussed the case with your fellow jurors and have carefully considered their views. You should not hesitate to re-examine your views and change your opinion if you become convinced that they are erroneous, but you should not surrender your honest opinions simply because other jurors disagree or merely to reach a verdict.

The jury deliberated without further communications until late that afternoon. At that point appellant moved for a mistrial on the grounds that the jurors indicated they were deadlocked and might feel pressure to reach a verdict before the upcoming Labor Day weekend. The court de-nied the motion at the time, but indicated it might consider the motion again the next day. The jury was excused for the evening and then returned a verdict late in the morning the next day, Friday, September 3.

The district court sentenced appellant to serve 365 days at the workhouse, with credit for one day served, beginning in October 2004. The court ordered that appellant be released on January 1, 2005, so that she would not be in prison on her due date, January 14. The court ordered appellant to then return to the workhouse on April 15, 2005, to complete her sentence there or on electronic home monitoring but with at least 180 days in custody. The court additionally sentenced appellant to 365 days on another count and stayed the sentence for three years.

On November 17, 2004, appellant moved to extend the time for service and filing of a motion for a new trial on the grounds that trial counsel failed to timely move for a new trial. On the same day, appellant moved for a new trial, alleging several general errors without further explanation. Appellant also moved to amend her sentence on the grounds of her pregnancy and depression. The district court denied appellant's motion to extend the time for a new-trial motion and denied appellant's motion for a new trial on the basis that it was unsupported. The district court granted appellant's motion for a hearing on her request to modify her sentence, but it appears that the district court denied the request to modify. This appeal followed.

## ISSUES

I. Did the district court err by admitting S.W.'s testimony of A.A.'s statement identifying appellant as the driver of the vehicle?

II. Did the district court err by admitting Officer Albright's testimony that S.W. told him A.A. identified appellant as the driver of the vehicle?

III. Was appellant denied the right to a fair trial because of prosecutorial misconduct?

IV. Did the district court abuse its discretion by denying appellant's motion for a mistrial?

V. Did the district court err by denying appellant's motion for an extension of time to file a motion for a new trial or abuse its discretion by denying appellant's motion for a new trial?

VI. Was appellant denied the effective assistance of counsel?

VII. Was appellant's sentence excessive?

## DECISION

### I.

■■■ Appellant argues that her rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution were violated when the district court allowed S.W. to testify as to A.A.'s statements identifying appellant as the driver of the other vehicle, when A.A. did not testify at trial. This court reviews de novo the issue of whether hearsay statements violate the Confrontation Clause. *State v. King*, 622 N.W.2d 800, 806 (Minn.2001).

Under *Ohio v. Roberts*, the Supreme Court held that out-of-court statements by unavailable witnesses could be admitted without violating the Confrontation Clause only if the statements bear "adequate indicia of reliability." 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (quotation omitted). This test is met if the hearsay "falls within a firmly rooted hearsay exception" or by "a showing of particularized guarantees of trustworthiness." *Id.* In *Crawford v. Washington*, the Supreme Court changed this test, holding that *testimonial* statements by witnesses who do not testify at trial could not be admitted unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. 541 U.S. 36, 53–54, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004). The *Crawford* test applies to testimonial statements, but the *Roberts* test still applies to nontestimonial statements. *State v. Martin*, 695 N.W.2d 578, 584–86 (Minn.2005).

Thus, if A.A.'s statement was testimonial, it should have been excluded because appellant did not have an opportunity to cross-examine A.A. *Id.* Under Minnesota law, if A.A.'s statement was not testimonial, it was correctly admitted only if it satisfies the *Roberts* test. *Id.*

In *Crawford v. Washington*, the Court did not specifically identify which types of statements are "testimonial," but defined "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or providing some fact." 541 U.S. 36, 51, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004). Further, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* The Court then listed three "formulations of this core class of 'testimonial' statements": (1) *"ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (2) "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (3) "statements that

were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 51–52, 124 S.Ct. at 1364.

In *State v. Wright*, the Minnesota Supreme Court concluded that certain statements to a 911 operator were not testimonial. 701 N.W.2d 802, 811 (Minn.2005). The supreme court rejected the proposition that all 911 calls are testimonial because the caller knows she is "initiat[ing] the criminal process." *Id.* The supreme court instead reasoned that "[i]t is doubtful that in the face of immediate danger a caller is contemplating how her statements might later be used at a trial. In asking the caller questions, the 911 operator seeks to ascertain the nature of the caller's peril and provide an appropriate response." *Id.* In holding that the 911 call in that case was nontestimonial, the supreme court focused on the caller's frightened and upset demeanor during the call, the temporal proximity of the call to the incident, and that the "operator focused only on obtaining information for an immediate intervention rather than a future prosecution...." *Id.*

This court similarly focused on the declarant's state of mind in *State v. Lasnetski*, 696 N.W.2d 387, 392–93 (Minn.App. 2005). In that case, this court held that a wife's statements to the police while she was on the phone with her husband, trying to convince him not to commit suicide, were nontestimonial, because "[g]iven the stress of the moment, a reasonable, objective witness would not even contemplate the possibility of a later trial, but would be solely engaged in preventing a suicide." *Id. See also State v. Krasky*, 696 N.W.2d 816, 819–20 (Minn.App.2005) (holding that a seven-year-old's statements to a nurse practitioner about her father's alleged child abuse were nontestimonial because

there was no evidence that the child was aware that the statements would later be used at a trial), *review granted* (Minn. Aug. 16, 2005).

■ Here, A.A.'s statement was not ex parte in-court testimony or its functional equivalent or formalized testimonial materials. A reasonable, objective witness in A.A.'s position would not be thinking about the possibility of a later trial, but would be focused on avoiding the chasing vehicle. Also, the statement was made to the passenger in the vehicle, not to police or to anyone affiliated with law enforcement. Thus, an objective witness in A.A.'s position would not reasonably believe that his statement to S.W. would be available for use at a later trial, and the statement, as testified to by S.W., was nontestimonial. Therefore, this court must consider whether A.A.'s statement meets the *Roberts* test for nontestimonial hearsay.

■ Under *Roberts*, hearsay statements do not satisfy the Confrontation Clause unless the declarant is unavailable. 448 U.S. at 74, 100 S.Ct. at 2543. But in a subsequent case, *White v. Illinois*, the Court held that the Confrontation Clause did not require a showing of unavailability to admit a hearsay statement under the exception for excited utterances. 502 U.S. 346, 353–57, 112 S.Ct. 736, 741–43, 116 L.Ed.2d 848 (1992). In *Crawford*, the Court noted that *White* did not address the issue of whether testimonial statements had to be excluded even if the witness was unavailable, but did not otherwise disturb *White's* holding as it applies to nontestimonial statements. 541 U.S. at 58 n. 8, 124 S.Ct. at 1368 n. 8. A.A.'s statement was admitted under an exception to the hearsay rule for excited utterances. *See* Minn. R. Evid. 803(2). Thus, no showing of unavailability was required to admit A.A.'s statement.

■ Even if the *White* holding did not survive *Crawford*, there is sufficient evidence that A.A. was unavailable. In order to admit the statements of an unavailable declarant, the state has to show that it made a "diligent, good-faith effort to locate and return a witness." *State v. Smith*, 563 N.W.2d 771, 775 (Minn.App.1997). In *Smith*, the court held the state did not make a sufficient effort when it attempted to serve process on the witness but it was returned because the witness moved to Georgia and the state did not attempt to find the witness's new address. *Id.* Here, the state served the subpoena on A.A. through a family member twice and called A.A., and a bench warrant was issued. The evidence supports the district court's finding that A.A. was unavailable.

■ Under *Roberts*, the hearsay statements also have to bear "adequate indicia of reliability." 448 U.S. at 66, 100 S.Ct. at 2539 (quotation omitted). But the reliability requirement is met if the hearsay is admitted under a firmly rooted exception. *State v. Johnson*, 679 N.W.2d 169, 174 (Minn.App.2004); *see also White*, 502 U.S. at 355 n. 8, 112 S.Ct. at 742 n. 8. The exception for excited utterances is firmly rooted. *State v. Gates*, 615 N.W.2d 331, 336–37 (Minn.2000). The second prong of the *Roberts* test is therefore met. A.A.'s statement was properly admitted through the testimony of S.W.

## II.

■ Appellant also argues that her Confrontation Clause rights were violated when the district court allowed Officer Albright to testify that S.W. told him A.A. identified the other driver as appellant.

The Minnesota Supreme Court recently held that "statements made to the police during a field investigation should be analyzed on a case-by-case basis according to the circumstances under which the statements are made." *Wright*, 701 N.W.2d at 812. The court stated several factors to consider in this analysis, including

(1) whether the declarant was a victim or an observer; (2) the declarant's purpose in speaking with the officer (e.g., to obtain assistance); (3) whether it was the police or the declarant who initiated the conversation; (4) the location where the statements were made (e.g., the declarant's home, a squad car, or the police station); (5) the declarant's emotional state when the statements were made; (6) the level of formality and structure of the conversation between the officer and declarant; (7) the officers' purpose in speaking with the declarant (e.g., to secure the scene, determine what happened, or collect evidence); and (8) if and how the statements were recorded.

*Id.* at 812–13. Under these factors, S.W.'s statement to Officer Albright may have been testimonial. *Crawford* bars only certain testimonial statements of witnesses who do not appear at trial. 541 U.S. at 53–54, 124 S.Ct. at 1365. S.W. testified at trial and was available for cross-examination on this statement. Even if the admission of hearsay within hearsay implicates *Crawford* when the original declarant does not make a testimonial statement, but the subsequent declarant makes a testimonial statement, appellant has not made a showing that she was prejudiced by Officer Albright's testimony.

■ A constitutional error does not require a new trial if it was harmless. *State v. Jones*, 556 N.W.2d 903, 910 (Minn. 1996). An error is harmless if the jury's verdict was "surely not attributable to the error." *State v. Blanche*, 696 N.W.2d 351, 367 (Minn.2005) (quotation omitted). When hearsay statements are admitted that are cumulative and not otherwise prejudicial, their admission is harmless er-

ror. *State v. DeRosier,* 695 N.W.2d 97, 106 (Minn.2005).

Here, S.W. testified that A.A. identified appellant as the driver shortly after Officer Albright testified that S.W. told him that A.A. identified appellant as the driver. Thus, Officer Albright's testimony was cumulative. Officer Albright's status as a police officer does not make the admission of A.A.'s statement to S.W. through him prejudicial because it does not make it any more likely that what A.A. told S.W. was true. Even if the admission of A.A.'s statement to S.W. through Officer Albright's testimony was error, it was harmless.

### III.

■ Appellant claims that the prosecutor committed misconduct by comparing the odds of her alibi defense being true with the chances, as stated by a juror, of having identical triplets. Appellant claims that, therefore, she was denied the right to a fair trial because of prosecutorial misconduct. Appellant did not object to the alleged misconduct at trial and responded to the prosecutor's reference to the juror's statement in her own closing argument.

■ This court will reverse a conviction due to prosecutorial misconduct at trial only if the misconduct, "when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Powers,* 654 N.W.2d 667, 678 (Minn. 2003). Reversal is required for unusually serious misconduct unless it was harmless beyond a reasonable doubt, but reversal is required for less serious misconduct only when it substantially influenced the verdict. *State v. Steward,* 645 N.W.2d 115, 121 (Minn.2002).

■ Generally, a party waives any challenge to alleged misconduct on appeal by failing to object or seek a curative instruction at trial. *State v. Ture,* 353 N.W.2d 502, 516 (Minn.1984). But in that situation, this court may review the misconduct if it was unduly prejudicial. *State v. Whittaker,* 568 N.W.2d 440, 450 (Minn. 1997).

■ Appellant first argues that the state's closing argument was improper because it referred to facts not in evidence. "[A] prosecutor should not base his argument on facts not in evidence." *State v. Stofflet,* 281 N.W.2d 494, 497 (Minn.1979). But the use of facts outside the evidence in a story to illustrate an argument is permissible. *See State v. Smith,* 619 N.W.2d 766, 771 (Minn.App.2000), *review denied* (Minn. Jan. 16, 2001) (upholding use of a fable's moral that necessity is the mother of invention to show why the appellant changed his story). Here, the state used a juror's statement that was not in evidence to illustrate a situation in which the odds of an occurrence are very slim. This was not improper.

Appellant also argues that the juror's statement may have given the impression that the statistical possibility he stated was accurate or based on expert testimony, even though it may not have been. In considering whether this statement was misconduct, it is not relevant whether the probability of having identical triplets *is* actually one in 14 million, so this argument fails. Expert testimony on the statistical possibility of an event has been excluded because of its "potentially exaggerated impact on the trier of fact." *State v. Boyd,* 331 N.W.2d 480, 482 (Minn.1983) (quoting *State v. Carlson,* 267 N.W.2d 170, 176 (Minn.1978)). But again, the prosecutor did not use the statement as evidence that appellant's alibi defense was untrue, but only used it as an illustration, so the use of a statistic was not misconduct.

■ Finally, appellant argues that the state's argument implied that appellant was lying and that it was an impermissible attack on her character. Character attacks have been found improper in closing arguments. *State v. Washington*, 521 N.W.2d 35, 39 (Minn.1994). But "the prosecutor is free to specifically argue that there is no merit to a particular defense in view of the evidence." *State v. Salitros*, 499 N.W.2d 815, 818 (Minn.1993). Here, the prosecutor's statement was a conclusion based on several transcribed pages of argument on facts and inferences about the credibility of witnesses. The statement was not an impermissible character attack, but simply an attempt to disprove appellant's alibi defense.

■ Further, appellant did not show she was prejudiced by the prosecutor's argument. Prosecutorial misconduct has been found harmless when the district court gave an instruction that closing arguments are not evidence. *See Ture*, 353 N.W.2d at 517. A defendant's failure to object to prosecutorial statements also suggests that the defendant did not consider them prejudicial. *State v. Thomas*, 305 Minn. 513, 517, 232 N.W.2d 766, 769 (1975). Here, the district court instructed the jury that attorneys' arguments are not evidence, appellant did not object to the prosecutor's statement at trial, and appellant chose to respond to the prosecutor's statement, thereby negating some of its effect. Thus, appellant was not denied her right to a fair trial by prosecutorial misconduct.

### IV.

■ Appellant argues that the district court erred in denying her motion for a mistrial. This court reviews a district court's decision whether to grant a mistrial for abuse of discretion. *State v. Yeboah*, 691 N.W.2d 87, 91 (Minn.App.2005), *review denied* (Minn. Apr. 19, 2005).

■ A deadlocked jury can be the basis for a mistrial, but the length of time a jury is required to deliberate before a mistrial is ordered is discretionary with the district court. *Id.* In *Jones*, 556 N.W.2d at 910, the appellant argued that when the jury informed the court it was deadlocked, the district court should not have paraphrased and then later read CRIMJIG 3.04 but instead should have granted his motion for a mistrial. The supreme court rejected the appellant's arguments and held that the district court's instruction did not coerce the jury to reach a verdict. *Id.* at 912.

Here, the district court read CRIMJIG 3.04 to the jury when it indicated it was deadlocked, and this procedure is acceptable under *Jones*. *Id.* Any pressure that the jury may have felt based on the upcoming holiday weekend does not rise to a level requiring a mistrial because the jury was not sequestered. The district court did not abuse its discretion in denying appellant's motion for a mistrial.

### V.

■ Appellant claims the district court erred by denying her motion to extend the time for filing a motion for a new trial. Under Minn. R.Crim. P. 26.04, subd. 1(3), a motion for a new trial must be served within 15 days after the verdict. The motion must be heard within 30 days after the verdict, unless the court extends the period for good cause. *Id.* The rule does not provide any exceptions to the requirement that the motion be served within 15 days of the verdict, and appellant did not provide any authority for such exceptions, so the district court did not err by denying appellant's motion to extend the time for filing a new-trial motion.

■ Appellant also claims the district court abused its discretion by denying

585

her motion for a new trial. This court reviews the district court's denial of a motion for a new trial for abuse of discretion. *State v. Varner,* 643 N.W.2d 298, 303 (Minn.2002). Here, appellant's motion was not timely filed and only summarily listed the grounds for a new trial without citing any authority. Further, the grounds listed are the same as those raised here, all of which fail. The district court's denial of appellant's motion for a new trial was not an abuse of discretion.

## VI.

■ Appellant claims she was denied the effective assistance of counsel because trial counsel did not timely move for a new trial. To prevail on such a claim, appellant must show that trial counsel's performance "fell below an objective standard of reasonableness" and "that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Blanche,* 696 N.W.2d at 376.

In *Patten v. State,* this court held that the failure of trial counsel to make a motion for a new trial did not constitute ineffective assistance of counsel because "[t]he failure to move for new trial does not affect the right of a criminal defendant to obtain review of the issues which may have been raised in a motion for new trial." 378 N.W.2d 648, 651 (Minn.App. 1985), *review denied* (Minn. Feb. 14, 1986). Similarly here, appellant can raise and has raised issues on appeal that could have been raised in a motion for a new trial. Appellant's ineffective-assistance claim fails.

## VII.

■ Appellant argues that her sentence is excessive because her father is ill and she recently had a baby. Appellant cites no legal authority for her position. This court need not address allegations not supported by legal analysis and citation. *Ganguli v. Univ. of Minn.,* 512 N.W.2d 918, 919 n. 1 (Minn.App.1994); *see also State v. Modern Recycling, Inc.,* 558 N.W.2d 770, 772 (Minn.App.1997) (refusing to consider issues raised for first time on appeal). Further, the district court considered appellant's pregnancy and heard testimony from her father when it decided her sentence, so appellant's argument lacks merit.

## DECISION

Because A.A.'s statement was nontestimonial and meets the *Roberts* test, the district court did not err by admitting it through S.W.'s testimony. Because the admission of S.W.'s statement about A.A.'s statement through Officer Albright's testimony was harmless, appellant's Confrontation Clause rights were not violated by its admission. Appellant's other arguments fail.

**Affirmed.**