*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0913**

State of Minnesota,
Respondent,

vs.

Eric Scott Knutson,
Appellant

**Filed July 28, 2014
Affirmed as modified
Worke, Judge**

Olmsted County District Court
File No. 55-CR-12-1035

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Stauber, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges his convictions of first-degree criminal sexual conduct and third-degree assault, arguing that (1) the district court abused its discretion by denying his

request for surrebuttal when the state improperly shifted the burden of proof; (2) the circumstantial evidence was insufficient to sustain his convictions; and (3) the district court erred in sentencing. Appellant also raises numerous issues in a pro se supplemental brief. We affirm appellant's convictions but modify his sentence.

## FACTS

In February 2012, appellant Eric Scott Knutson was the primary caregiver for his daughters, six-year-old H.K. and 23-month-old A.K. The girls' mother, C.B., had been receiving treatment at a chemical-dependency center since September 2011.

On Thursday, February 2, 2012, around 11:00 a.m., Knutson dropped the girls off at their daycare provider's home. Their daycare provider, M.G., noticed that A.K. was extremely tired and let her sleep through the morning. When she woke up, M.G. changed A.K.'s diaper. M.G. removed A.K.'s diaper and "stopped and . . . [was] frozen in time for a minute" because she saw blood in A.K.'s diaper. She cleaned A.K., but could not find the source of the blood. M.G. called child protection reporting what she saw, and stating that she had no idea what to do about it, but that somebody should check it out. M.G. was instructed to tell Knutson about the blood in A.K.'s diaper.

When Knutson arrived at his normal time to pick up the girls, sometime between 4:30 and 5:00 p.m., M.G. told Knutson that there was something wrong with A.K. and that he needed to call the nurse line or take her to the hospital. Later that night, Knutson contacted M.G. and told her that he called the nurse line and was told that A.K. was fine and did not need to see a doctor.

2

On February 2, C.B. was staying at her mother's house near where Knutson and her daughters lived. She called Knutson, and he told her that A.K. had blood "coming out of her." C.B. told Knutson to call the nurse line or take A.K. to the doctor. Knutson told C.B. that it was no big deal, that it was probably a "pimple," and assured her that he would seek medical attention if A.K.'s condition worsened. C.B. asked Knutson to bring the girls to her mother's house that night, but Knutson said that they were ready for bed.

On Friday morning, February 3, C.B. called Knutson. Knutson told C.B. that he called the nurse line and was instructed to put ointment on A.K.'s wound, but because she was no longer bleeding he did not need to bring A.K. to see a doctor. Knutson told her that "everything was fine and that they were going forward with the day as planned." Knutson dropped the girls off at M.G.'s on Friday morning and told M.G. that A.K. was fine. But when M.G. changed A.K.'s diaper, she noticed that A.K.'s genital area looked worse because it was less swollen and she could more easily see the injury. A.K.'s genital area was red and looked "torn" or "cut" in the area between her vagina and rectum.

On Saturday, February 4, Knutson dropped the girls off at C.B.'s mother's house around 10:50 a.m. Within five minutes, C.B. was changing A.K.'s diaper and "gasped" when she saw blood. C.B.'s mother, a public-health nurse, saw A.K.'s wound and decided to take her to the emergency room. Dr. Richard Kvam, an emergency room physician, examined A.K. He found an "injury to the perineum, and . . . a fairly extensive tear all the way from the vagina to the rectum and a few abrasions." Dr. Kvam

3

knew immediately that A.K. needed to be transferred to the hospital. He also suspected abuse and called social services.

Dr. Marcie Billings, a pediatrician at the Mayo Clinic in Rochester, was asked to consult on A.K.'s case. Dr. Billings first examined A.K.'s external genital area, and it "was very obvious that there was an area kind of between the vaginal opening and the anal opening that was traumatized." Upon separation of A.K.'s labia, Dr. Billings noticed that the laceration was "fairly wide" and "deep." On further separation, she observed that A.K.'s hymen was "transected or lacerated in two separate positions." Dr. Billings determined that A.K. had perineal trauma, which is suggestive of abuse because the trauma was extensive. A.K.'s injury was caused by "significant force," which would not typically happen without penetration. Dr. Billings contacted the pediatric surgical department to conduct an internal evaluation after she observed gelled blood inside A.K.'s vagina.

Dr. Christopher Moir, a pediatric surgeon at the Mayo Clinic, performed surgery on A.K. A.K. suffered a penetrating injury, rather than a "straddle injury," because her labia were essentially uninjured. "[A]n unusually large amount" of force was necessary to cause A.K.'s injury, which she in "no way" could have inflicted herself. Based on signs of healing, Dr. Moir believed A.K.'s injury to be about a day old. Dr. Moir described A.K.'s injury as "identical to a severe tear with childbirth," something that he has never seen in a child so young. A.K.'s injury was "one step away from being the

4

most severe injury you can ever have in that area."[1] Surgery was performed so that A.K. would not experience risks of poor bowel function, urinary tract infections, and a non-functional vaginal canal.

On February 4, Investigator Eric Boynton received a call about A.K.'s injury. Boynton went to Knutson's home that night. Knutson appeared to be intoxicated. When asked about A.K.'s injury, Knutson stated that she "ripped up at her bowel." Knutson stated that he called the nurse line and took A.K. to the doctor. But during a later interview, Knutson admitted that he did not call the nurse line or take A.K. to the doctor. Knutson was also unable to turn over A.K.'s old diaper, the clothes she wore earlier in the week, or her bedding, claiming that A.K. had thrown up in bed and he had done the laundry.

On December 18, 2012, following a five-day trial, the jury found Knutson guilty of first-degree criminal sexual conduct and third-degree assault. A presentence investigation (PSI) showed a presumptive prison sentence of 168 months, with a lower range of 144 months and an upper range of 202 months. The district court imposed a 202-month sentence because of the victim's age, the seriousness of her injury, and because she was completely defenseless and profoundly hurt. The district court stated that while "[t]here is no basis to depart" from the sentencing guidelines, there was "a fair, just and reasonable basis to go to the top of the box," and that "202 months is simply the toughest penalty . . . authorized . . . under these circumstances." This appeal followed.

---

[1] A.K.'s tear came into the wall of the rectum down to the circular muscle, which is the second muscle layer of the rectum. The tear had not quite opened all the way into the rectum, which would have been the most severe injury.

# DECISION

## *Closing argument*

Knutson first argues that because the prosecutor shifted the burden of proof in rebuttal closing argument, the district court abused its discretion by denying his request for surrebuttal argument and a cautionary instruction. "The decision to grant surrebuttal closing argument lies within the sound discretion of the district court." *State v. Morrow*, 834 N.W.2d 715, 729 (Minn. 2013) (stating that Minn. R. Crim. P. 26.03, subd. 12(k), provides that a district court "may allow" the defense a surrebuttal closing argument). Whether to provide cautionary instructions is also within the district court's discretion, and we will review that decision only for an abuse of that discretion. *See State v. Roman Nose*, 667 N.W.2d 386, 397-98 (Minn. 2003).

During trial, text messages that M.G. sent near the time that she discovered A.K.'s injury were admitted into evidence. Defense counsel argued in closing argument that law enforcement focused on Knutson without investigating the possibility that A.K. was injured at M.G.'s home. Defense counsel also argued that not only did M.G. send the text messages while children were in her care, but she then lied about sending the messages and then admitted she sent the messages on behalf of a friend. Knutson challenges the following statement in the prosecutor's rebuttal closing argument:

> The defense wants you looking a lot of other places. They want you following a lot of other trails.
> Now, would [M.G.] get daycare provider of the year for texting for a marijuana joint or a half of a joint while she's providing daycare services? No. Does that mean there's any evidence that she used? No. Any evidence that she used while she was in possession or while she was in care of

6

children? No. And it actually makes the theory that she hurt the child a little crazier.

So during that time frame from 12:30 to the report at 2:30, she's sending at least 11 text messages while causing this horrific injury, cleaning it up, making the decision that actually I just hurt this girl and now I'm going to get caught, so what's the best way not to get caught. I'll call [s]ocial [s]ervices. All within the two hours or less since the drop offs at 12:30 since [Knutson] was there himself. Is that logical? Is that reasonable doubt?

The prosecutor responded that M.G.'s sending a text message seeking marijuana did not mean that she used it while she provided childcare. This fairly represents the evidence, does not shift the burden of proof to Knutson, or misstate the law. *See* Minn. R. Crim. P. 26.03, subd. 12(k) (stating that the district court may allow a defense rebuttal if the court finds the prosecution has made a misstatement of law or fact or an inflammatory or prejudicial statement in rebuttal).

After the district court denied the request for surrebuttal argument, it asked defense counsel whether there was "some corrective action that the [c]ourt should take short of giving the [requested] surrebuttal argument?" Defense counsel stated that the court could remind the jury that anything said by the attorneys is not evidence and that it is the state's "burden to prove and the defendant doesn't have to prove anything." The district court declined to repeat the instructions.

This is not necessarily an issue of the district court refusing to give a cautionary instruction; rather, it is the district court merely declining to remind the jury of its instructions. The district court had instructed the jury that it was the state's burden to prove Knutson guilty and that Knutson did not have to prove his innocence. The district

7

court also had instructed the jury that an attorney's statement was not evidence and that if an argument contained a statement of law that differed from the law as instructed it was to be disregarded. Therefore, the district court properly instructed the jury and did not abuse its discretion by declining to repeat the jury instructions.

*Sufficiency of the evidence*

Knutson next argues that the evidence is insufficient to support his convictions because the state "fell short of establishing that [he] was the perpetrator because he did not have sole access to [A.K.] during the time period when the injury was thought to have occurred."

When reviewing a challenge to the sufficiency of the evidence, this court views "the evidence in the light most favorable to the verdict and assume[s] that the [jury] rejected any evidence inconsistent with the verdict." *State v. Pendleton*, 759 N.W.2d 900, 909 (Minn. 2009). The verdict will not be overturned if the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt. *State v. Hughes*, 749 N.W.2d 307, 312 (Minn. 2008).

Knutson's convictions were based on circumstantial evidence, which is entitled to the same weight as direct evidence and will permit a conclusion that the convictions were supported by the evidence. *See State v. Whittaker*, 568 N.W.2d 440, 452-53 (Minn. 1997). This court takes a two-step-analysis approach in evaluating whether circumstantial evidence supports a conviction. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved. *Id.* In doing so, we defer "to

8

the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *Id.* at 598-99 (quotation omitted). Second, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 599 (quotation omitted).

The circumstances proved include: (1) A.K. suffered a severe injury to her genital area, (2) A.K.'s injury was caused by "an unusually large amount" of force, (3) A.K. could not have caused her own injury, (4) A.K.'s sister, H.K., could not have caused A.K.'s injury, (5) A.K. was injured sometime between being picked up from daycare on February 1—which was typically between 4:30 and 5:00 p.m.—and 2:30 p.m. on February 2 when M.G. reported the injury, (6) A.K.'s mother did not have contact with A.K. during the time when the injury occurred, (7) Knutson lied about calling a nurse and taking A.K. to see a doctor, and (8) investigators were unable to collect evidence from A.K.'s clothing, bedsheet, or diaper because Knutson claimed to have washed or disposed of them. This circumstantial evidence is consistent with Knutson's guilt and inconsistent with any rational hypothesis except that of his guilt. *See id.*

Knutson argues that the only evidence that he was alone with A.K. during the time when she was injured comes from his statement, which cannot be used as the sole evidence against him. *See* Minn. Stat. § 634.03 (2012) (stating that a confession is insufficient to support a conviction without evidence that the offense charged has been committed). But Knutson did not confess to committing the offense. He stated that he was with his daughters during the timeframe when A.K. suffered her injury. There are

9

additional circumstances to support that the offenses were committed outside of Knutson's statement. The evidence sufficiently supports Knutson's convictions.

*Sentence*

The district court stated its intention to sentence Knutson at the upper end of the range, but relied on an error in the sex-offender grid when it imposed a 202-month sentence. The state agrees that Knutson should have been sentenced to 201 months in prison instead of 202 months.

After Knutson's worksheet was prepared, the sex-offender sentencing grid was modified to correct sentencing errors that, in some instances, resulted in sentences outside of the lawful range. *See* Minn. Stat. § 244.09, subd. 5(2) (2012) (stating that "[t]he guidelines shall provide for an increase of 20 percent and a decrease of 15 percent in the presumptive, fixed sentence"); 2012 Minn. Laws ch. 229, § 1, at 692 (stating that the sex-offender sentencing grid shall be modified "to ensure that it provides for an increase of not greater than 20 percent and a decrease of not greater than 15 percent in the presumptive fixed sentence"). Knutson's worksheet showed that the presumptive sentence was 168 months in prison. Adding 20% to the presumptive sentence is 201.6, which is rounded down to 201 months. *See* Minn. Sent. Guidelines 4.B (2014). Knutson's sentence shall be modified to 201 months in prison.

*Pro se supplemental brief*

Knutson raises approximately 40 claims in his pro se supplemental brief. The majority of his claims are not supported by legal argument or authority. *See State v. Ahmed*, 708 N.W.2d 574, 585 (Minn. App. 2006) (stating that we need not address

10

allegations not supported by legal analysis and citation). Others are raised for the first time on appeal. *See State v. Modern Recycling, Inc.*, 558 N.W.2d 770, 772 (Minn. App. 1997) (refusing to consider issues raised for first time on appeal). A thorough review of the entire record supports the conclusion that Knutson's pro se claims lack merit.

**Affirmed as modified.**